IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. MAMADOU KONATE,

    Plaintiff,

        v.                                          Civil Action No. 2:22-cv-125

NORFOLK STATE UNIVERSITY,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Norfolk State University's ("Defendant" or "NSU") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions and argument would not aid the decisional process. E.D. Va. Loc. R. 7(J). Therefore, NSU's request for a hearing, ECF No. 9, will be denied. For the reasons that follow, the Court will grant NSU's Motion to Dismiss.

### I. BACKGROUND

**A. Facts**[1]

This employment action arises out of NSU's alleged retaliation against Plaintiff for engaging in activities protected by Title VII. Am. Compl., ECF No. 1-1.[2] Plaintiff began his employment with NSU as an adjunct faculty member in 2016 and later became a full-time

---

[1] In considering the Motion to Dismiss, the Court accepts the well-pleaded factual allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

[2] ECF No. 1-1 contains the parties' pleadings prior to removal from the Circuit Court of the City of Norfolk. Plaintiff's first amended complaint is the operative complaint. It is located at ECF page numbers 83–89 and will be cited throughout as "Am. Compl."

professor. *Id.* ¶¶ 7–8. In May 2019, NSU "terminated Dr. Konate's contract." *Id.* ¶ 8. Plaintiff complained to the Faculty Senate that his termination failed to comply with NSU procedure and he was reinstated to his tenure-track contract in September 2019. *Id.* ¶¶ 9, 11. Plaintiff alleges that NSU's Director of Human Resources was terminated because of Plaintiff's complaint and that Plaintiff was subjected to "ongoing retaliation" thereafter. *Id.* ¶ 10.

On February 19, 2020, Plaintiff filed a complaint of retaliation and discrimination in violation of Title VII with NSU's Office of Institutional Equity. *Id.* ¶ 11. Plaintiff's complaint alleged that NSU had tried to dismiss him "without merit in 2018–2019" and was again attempting to terminate his employment "by not providing a fair and unbiased evaluation process." *Id.* Plaintiff asserts that NSU administrators refused to file his immigration visa in retaliation. *Id.* Plaintiff also alleges that he "complained to supervisors that he believed NSU was engaged in unlawful activity" since July 1, 2020. *Id.* ¶ 18.

On September 10, 2020, Plaintiff contacted NSU's Board of Visitors to make a complaint.³ *Id.* ¶ 14. The next day, Plaintiff received a one-year terminal contract. *Id.* NSU's provost told Plaintiff that he had received a one-year terminal contract because of "poor performance," namely, absences during Plaintiff's fall 2019 separation from NSU and "other false allegations." *Id.* NSU later told a "state investigator" that Plaintiff received a one-year terminal contract because his application for tenure and promotion was denied, an explanation Plaintiff alleges is false because he never applied for tenure and promotion. *Id.* ¶¶ 14, 16. Plaintiff further alleges that although he

---

³ The Amended Complaint does not state the subject matter of or any additional detail regarding Plaintiff's September 10, 2020 complaint. *See* Am. Compl. *in passim*. The Amended Complaint notes NSU faculty members did not receive annual contracts in 2021 because of the COVID-19 pandemic, that Plaintiff was instructed not to teach classes because his contract was not ready, and that he forwarded student complaints that his courses "were not covered" to NSU's president and Board of Supervisors. *Id.* ¶¶ 12–13. However, the Amended Complaint does not tie these allegations to Plaintiff's September 10, 2020 complaint or otherwise explain how they relate to his retaliation claim.

should have been able to stay in his office through the summer of 2021, NSU forced him to vacate his office in May 2021. *Id.* ¶ 15. Plaintiff additionally alleges that NSU did not allow him to conduct an "incomplete class" during this time, and asserts the basis for these actions was his refusal to give an NSU football player a passing grade. *Id.*

### B. Procedural History

On February 26, 2021, the United States Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights ("Right to Sue Notice") informing Plaintiff that it was closing its file on his previously-made charge and that it "[would] not proceed further with its investigation, and [made] no determination about whether further investigation would establish violations of the statute." Mem. in Supp., Ex. A, ECF No. 5-1.[4] The Right to Sue Notice further advised Plaintiff that he "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court" but that the lawsuit "must be filed **WITHIN 90 DAYS**" of his receipt of the Right to Sue Notice. *Id.* (emphasis in original).

On May 10, 2021, Plaintiff, by counsel, filed a single-count lawsuit alleging retaliation in violation of Virginia Code § 40.1-27.3 in the Circuit Court for the City of Norfolk. Compl., ECF

---

[4] Plaintiff does not allege that he filed a charge of discrimination with the EEOC or that he received a right to sue notice from the EEOC. *See* Am. Compl. *in passim*. The Court may consider the Right to Sue Notice attached to NSU's Motion to Dismiss because it is "integral to" the Amended Complaint and its authenticity is undisputed. *Kensington*, 684 F.3d at 467 (quoting *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Burton v. Maximus Fed.*, No. 3:20cv955, 2021 WL 1234588, at *3 n.4 (E.D. Va. Apr. 1, 2021) (examining EEOC charge and right to sue notice attached to the plaintiff's complaint and the defendant's memorandum in support of its motion to dismiss "because both are integral to and explicitly relied on in the amended complaint").

No. 1-1, at 7–10.[5] On February 7, 2022, the Norfolk Circuit Court sustained NSU's plea in bar[6] to the complaint and granted Plaintiff leave to file an amended complaint "asserting a claim under the Civil Rights Act of 1964." Plea in Bar Order 2, ECF No. 1-1 at 79–81. The state court further ordered that "[i]f no amended complaint is filed [by February 28, 2022], [the] action will stand dismissed with prejudice." *Id.* Plaintiff filed the Amended Complaint, which asserts a single count of retaliation in violation of Title VII, on February 28, 2022.[7] Am. Compl. ¶¶ 17–23. After filing a second plea in bar, NSU removed the case to this Court on March 22, 2022, and filed the Motion to Dismiss on April 18, 2022. Notice of Removal, ECF No. 1; Motion to Dismiss, ECF No. 5. Plaintiff responded, ECF No. 7, and NSU replied, ECF No. 8.

On November 17, 2022, the Court conducted an initial pretrial conference and *sua sponte* granted Plaintiff leave to file an amended complaint within 14 days. ECF No. 12. Plaintiff declined to do so and no amendment was filed.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable

---

[5]     Plaintiff's initial May 10, 2021 complaint was unsigned. *Id*. By agreed order and pursuant to Virginia Code § 8.01-271.1(G), the signature defect was corrected and a signed complaint was filed June 28, 2021. Order and Corrected Compl., ECF No. 1-1, at 23–31.

[6]     "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 878 S.E.2d 191, 194 (Va. 2022) (citation omitted).

[7]     Although the Amended Complaint states it "is an action for retaliation in violation of [Title VII] and 42 U.S.C. § 1981a ("Title VII")," the pleading sets forth a single claim for "[r]etaliation in violation of Title VII" without further reference to 42 U.S.C. § 1981. Am. Compl. ¶¶ 1, 17–23. Therefore, the Court treats Plaintiff's claim as a single retaliation claim under Title VII.

inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214 (internal quotations omitted).

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

NSU moves to dismiss Plaintiff's claims on three grounds: (1) untimeliness; (2) failure to allege exhaustion of administrative remedies; and (3) failure to state a claim. The Court finds the Amended Complaint relates back to the date of the initial complaint and is therefore timely. The Court also declines to dismiss the Amended Complaint for failure to allege exhaustion of administrative remedies, but finds that the Amended Complaint fails to state a claim for retaliation under Title VII. On that basis, the Court will dismiss the Amended Complaint without prejudice.

#### A. Exhaustion of Administrative Remedies

Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citations omitted). A plaintiff's EEOC charge defines the scope of his subsequent right to file a civil suit. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citation

omitted). Plaintiff acknowledges that he did not allege in the Amended Complaint that he filed an EEOC charge. Mem. in Opp'n 4–5. Instead, Plaintiff contends that the Court may take judicial notice of his EEOC charge and Right to Sue Notice, which NSU attached to its defensive pleadings, and that such judicial notice cures any failure to allege exhaustion of administrative remedies. *Id.* NSU argues that Plaintiff must plead administrative exhaustion regardless of whether the charge and notice have been provided to the Court. Reply 6. In support of its position, NSU cites *Coles v. Deltaville Boatyard, LLC*, No. 3:10cv491, 2011 WL 666050, at *3 (E.D. Va. Feb. 14, 2011). There, the court noted plaintiff's failure to plead exhaustion of administrative remedies and dismissed the plaintiff's amended complaint accordingly, but allowed plaintiff "leave to further amend" as the pleading deficiency could be "easily remed[ied]." *Id.* NSU does not point to any authority requiring dismissal under these circumstances, and the Court declines to dismiss the Amended Complaint on the basis of failure to allege exhaustion of administrative remedies. *See Walton*, 33 F.4th at 175 ("Although exhaustion is imperative, it is not jurisdictional"). The Court will consider the timeliness and merits of Plaintiff's claims.

   **B. The Amended Complaint is Timely**

   Title VII requires that an aggrieved individual file a civil action within ninety days after receiving a right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Angles v. Dollar Tree Stores*, 494 F. App'x 326, 328 (4th Cir. 2012). The Amended Complaint does not refer to the Right to Sue Notice or allege when Plaintiff received it, but the Federal Rules of Civil Procedure and case law supply a deadline of June 1, 2021.[8] Plaintiff timely filed suit three weeks before the

---

[8] When the date that a potential plaintiff received actual notice of right to sue is disputed or unknown, Fed. R. Civ. P. 6(e) creates the presumption that notice was received three days after it was mailed. *See Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796–97 (E.D. Va. 2007) (collecting cases). The EEOC issued the Right to Sue Notice on February 26, 2021. Right to Sue Notice, ECF No. 5-1. Therefore, Plaintiff's deadline expired on May 30, 2021. Because May 30 fell on a Sunday, and the following Monday was a legal holiday, Plaintiff had until June 1, 2021, to timely file his complaint. *See* Fed. R. Civ. P. 6(a)(1)(C).

deadline on May 10, 2021. The Norfolk Circuit Court later sustained NSU's plea in bar to the complaint, but did not dismiss the case, and allowed Plaintiff the opportunity to amend. Plea in Bar Order 2, ECF No. 1-1 at 79–81. Plaintiff then filed the Amended Complaint on February 28, 2022. The Amended Complaint substitutes a claim for "Retaliation in violation of Title VII" for "Retaliation in violation of Virginia Code § 40.1-27.3" and adds certain allegations, *e.g.*, Am. Compl. ¶¶ 11, 15, but is otherwise nearly identical to Plaintiff's initial complaint. *Compare* Compl., ECF No. 1-1 at 26–31, *with* Am. Compl., ECF No. 1-1 at 83–89.

NSU asserts the Amended Complaint is untimely because the Norfolk Circuit Court's order sustaining NSU's plea in bar dismissed the initial complaint without prejudice and cut off any tolling of the 90-day deadline. Mem. in Supp. 3–5. According to NSU, when Plaintiff filed the Amended Complaint in February 2022, it was as if the initial complaint had never been filed, and the February 2022 complaint was thus well outside the 90-day statute of limitations. NSU argues the Amended Complaint cannot relate back to the initial complaint because of the Norfolk Circuit Court's ruling on the plea in bar, which NSU avers had the effect of a dismissal without prejudice. Reply 2–5. Plaintiff contends the Amended Complaint relates back and is timely pursuant to Fed. R. Civ. 15(c)(1)(B). Mem. in Opp'n 1–2.

NSU cites several cases in support of its position, but none resemble the procedural posture here. For example, in *Young v. Didlake Inc.*, No. 2:15cv222, 2015 WL 13064932, at *1 (E.D. Va. Sept. 23, 2015), plaintiff filed two lawsuits. In the first, the court granted plaintiff leave to amend her complaint but ultimately dismissed the lawsuit without prejudice. After the dismissal of this first lawsuit, the plaintiff filed a second lawsuit, which the court determined was untimely. *Id.* at *3. Similarly, in *High v. Wells Fargo Bank*, 3:21cv81, 2021 WL 2530980, at *6 (E.D. Va. June 21, 2021), the plaintiff's initial, timely lawsuit was dismissed without prejudice when the plaintiff failed to file an amended complaint by the court's deadline. The court only dismissed plaintiff's

claim as time-barred when she filed a subsequent lawsuit nearly a year later. *Id.* Here, Plaintiff's position is similar to that of the plaintiffs in *Young* and *High before* their initial lawsuits were dismissed without prejudice. Like those litigants, Plaintiff was given leave to amend. But unlike the plaintiffs in *Young* and *High*, Plaintiff did so within the time set by the court, and his lawsuit was not dismissed but continued under the operative Amended Complaint.

Rule 15(c) of the Federal Rules of Civil Procedure governs relation back of amendments in federal court.[9] Under the Rule, "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The facts set forth in the Amended Complaint in most respects mirror those in Plaintiff's initial complaint. The Amended Complaint asserts a claim "that arose out of the conduct, transaction, or occurrence" set out in the initial complaint. Thus, it relates back to the date of the initial complaint and is timely.

### C. The Amended Complaint Fails to State a Plausible Claim for Retaliation

To survive a motion to dismiss, a plaintiff must "allege facts to satisfy the elements of a cause of action created by [the relevant] statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). "Title VII prohibits an employer from

---

[9] It is unclear whether Federal Rule of Civil Procedure 15(c) or Virginia Code § 8.01-6.1, Virginia's relation back statute, applies in this instance. *See Dietz v. McAdams-Norman Prop., II, LLC*, No. 7:12cv509, 2013 WL 247651, at *2 (W.D. Va. Jan. 23, 2013) ("Notably, there is no general consensus as to whether state law or federal law should apply to the question of whether a new claim should relate back to the original complaint"); *Patel v. Jones*, 7:21cv401, 2022 WL 822113, at *5 (W.D. Va. Mar. 17, 2022) (finding that application of Virginia statute allowing pleader to cure signature defect "became moot once the cases were removed to federal court"); *but see Ballard v. Bed Bath & Beyond, Inc.*, No. 3:18cv92, 2018 WL 2108024, at *5 n.4 (E.D. Va. May 7, 2018) ("Virginia law, not Federal Rule of Civil Procedure 15(c), governs the relation back inquiry in this case, because the relevant amendment occurred prior to removal of this action to federal court"). Although the parties do not brief this issue, the Court would reach the same conclusion under either application.

discriminating against an employee 'because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e–3(a) and *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

Absent direct evidence of retaliation, the elements of a Title VII retaliation claim are: (1) protected activity, (2) a materially adverse action taken by the employer against the employee, and (3) a causal connection between the protected activity and the adverse action. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (citations omitted). Although a prima facie claim need not be pleaded to survive dismissal, a plaintiff must allege facts to support each element of his claim and factual allegations must raise a right to relief that is not speculative. *See McCleary-Evans*, 780 F.3d at 584–85; *Merswin v. Esper,* No. 1:20cv548, 2022 WL 2103990, at *2 (E.D. Va. Apr. 6, 2022).

1.  <u>Protected Activity</u>

"[T]o show protected activity, [a] plaintiff in a Title VII retaliation case need only prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (cleaned up); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) ("Protected activity under Title VII includes complaints of discrimination based upon race, color, religion, sex or national origin") (internal quotation marks omitted).

The Amended Complaint states that "[o]n 2/19/20, Plaintiff filed a complaint (Retaliation and Discrimination)" and that he "filed a Title VII complaint in NSU's Office of Institutional Equity against Dr. Sheen for trying to dismiss him by not providing a fair and unbiased evaluation

process." Am. Compl. ¶ 11.[10] While the filing of a complaint is reasonably viewed as "opposition," it is unclear what activity or practice Dr. Konate was opposing. Importantly, the Amended Complaint does not provide any additional information as to the basis for Plaintiff's complaint, allege what unlawful activity he opposed, or state that he was discriminated against based on his "race, color, religion, sex, or national origin."[11] Similarly, Plaintiff's sparse allegations do not address whether Plaintiff "opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015); *see also Laughton v. Hampton Roads Shipping Ass'n*, No. 2:14cv427, 2015 WL 11112496, at *1 (E.D. Va. May 11, 2015) (granting motion to dismiss where "[t]he correspondence provided by Plaintiff to Defendant does not indicate that he was complaining about any discrimination based upon a [protected class]") (citation omitted), *aff'd*, 613 F. App'x 234 (4th Cir. 2015). Even drawing all inferences in Plaintiff's favor, the Court cannot conclude that Plaintiff has adequately alleged his internal February 2020 complaint of harassment and discrimination is protected activity. However, even if the Court were to conclude Plaintiff has adequately alleged a protected activity, as explained below, Plaintiff's retaliation claim fails because the Amended Complaint does not allege a plausible causal connection between any protected activity and adverse action.

---

[10] The Amended Complaint references other instances of conflict with NSU that plainly do not constitute protected activity. Plaintiff asserts "[h]e contacted the Faculty Senate" about his May 3, 2019 termination; he "contacted the Board of Visitors to make a complaint" on September 10, 2020, and he "refused to give a passing grade to [an NSU football player]." Am. Compl. ¶¶ 8, 14–15. None of these allegations suggest that Plaintiff was opposing "employment actions actually unlawful under Title VII" or "employment actions [he] reasonably believe[d] to be unlawful" and there are no other facts that would allow the Court to make such an inference. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).

[11] Dr. Konate does not allege that he is a member of a protected class, but does allege that Dr. Sheen and others refused to file his immigration visa. Am. Compl. ¶ 11.

### 2. Materially Adverse Action

Plaintiff's receipt of a terminal one-year contract is effectively a termination, which is a materially adverse action. *See Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 830 (E.D. Va. 2016).

### 3. Causal Connection

A plaintiff can establish a causal connection by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took action against the employee soon after becoming aware of such activity. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335–36 (4th Cir. 2018). As discussed above, the Court cannot conclude based on the limited information provided that Plaintiff engaged in protected activity and thus cannot find NSU understood or should have understood Plaintiff engaged in protected activity. However, even assuming protected activity and NSU's understanding of such protected activity, Plaintiff has not pled that NSU took action against him "soon after" becoming aware of any protected activity. Plaintiff asserts he "was given a terminal contract in retaliation for engaging in a protected activity, in violation of Title VII" and that "a series of retaliatory acts" establish a causal link "between his protected activity on February 19, 2020 and his receipt of a one-year terminal contract on September 11, 2020." Am. Compl. ¶ 16; Mem. in Opp'n 5. NSU argues there is a lack of causation between Plaintiff's protected activity and his termination such that Plaintiff cannot state a plausible clam for relief. Mem. in Supp. 6–10; Reply 7–9. The Court agrees with NSU.

Standing alone, Plaintiff's receipt of a terminal contract on September 11, 2020, occurred too long—almost nine months—after his February 19, 2020 complaint to suggest a causal connection. "Although there is no 'bright-line rule' for temporal proximity," the Fourth Circuit "has held that a lapse of three to four months between the employer's knowledge of protected

activity and the alleged retaliation is too long to establish a causal connection by temporary proximity alone." *Roberts*, 998 F.3d at 127 (citations omitted). Plaintiff points to "ongoing retaliation," Am. Compl. ¶ 10, to bridge the nine-month gap between his protected activity in February 2020 and receipt of a one-year terminal contract in September 2020.

Plaintiff is correct that "courts look to ongoing retaliatory animus or intervening antagonism during the period between the protected activity and the adverse action in order to find a causal connection where there is a lack of temporal proximity." *Reardon v. Herring*, 191 F. Supp. 3d 529, 552 (E.D. Va. 2016) (quotation omitted). But the acts Plaintiff asserts were "ongoing retaliation" do not live up to that label, even drawing all reasonable inferences in Plaintiff's favor. Plaintiff alleges that (1) NSU was attempting to terminate his employment "as of" his internal complaint on February 19, 2020 and (2) after his complaint, he "was told not to teach classes since his contract was not ready." Mem. in Opp'n 5, ECF No. 7. The first alleged instance of ongoing retaliation, NSU's attempt to terminate Plaintiff as of his internal complaint, cannot be considered "ongoing retaliatory animus or intervening antagonism" because NSU's attempt to terminate Plaintiff on February 19 was simultaneous with Plaintiff's internal complaint. By Plaintiff's own allegations the attempt to terminate his employment was not "between" his protected activity and the adverse action. Am. Compl. ¶ 11; *Reardon*, 191 F. Supp. 3d at 552. Even if the attempt to terminate Plaintiff's employment took place soon after his February 2020 internal complaint, any such attempt would have the same lack of temporal proximity to Plaintiff's termination as his internal complaint.

The second alleged instance of ongoing retaliation, NSU's instruction to Plaintiff not to teach classes since his contract was not ready, does not support an inference of retaliatory animus. The Amended Complaint explains that the COVID-19 pandemic delayed new contracts. Am.

Compl. ¶ 12. Plaintiff does not allege any facts to explain why such an instruction under the circumstances indicates retaliatory animus.

A generous reading of the Amended Complaint yields two other potential instances of retaliation. First, Plaintiff alleges that NSU administrators "refused to file [his] immigration visa as an act of retaliation." Am. Compl. ¶ 11. Second, Plaintiff was asked to leave NSU early and was not permitted "to stay in his office during the summer and complete his incomplete class." *Id.* ¶ 15. But neither of these possible acts of retaliation, without more, are "materially adverse actions" sufficient to state a claim for retaliation. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). The Amended Complaint does not state when or for how long NSU administrators refused to file Plaintiff's immigration visa, whether they ultimately did so despite their initial refusal, or whether and how their refusal adversely and materially affected him. As to the second potentially retaliatory action, Plaintiff had already been given notice of a one-year terminal contract in September 2020, and again, the Amended Complaint does not allege whether or how being forced to leave his office in May rather than August 2021 had an adverse and material impact. Moreover, the Amended Complaint does not allege any protected activity with a causal connection to retaliatory action in May 2021, the timeframe in which Plaintiff alleges he was forced to leave NSU early.

In sum, the Amended Complaint does not identify any protected activity by Plaintiff that could have prompted NSU to give him a one-year terminal contract in September 2020. There must be "some degree of temporal proximity to suggest a causal connection" between an alleged protected activity and the adverse action. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Even drawing all reasonable inferences in Plaintiff's

favor from the facts as alleged and construing the Amended Complaint broadly, the absence of temporal proximity between any alleged protected activity and termination of Plaintiff's employment, combined with the lack of any allegations to support an inference of ongoing retaliation, warrants a finding that Plaintiff has not adequately alleged that termination of his employment was causally related to a protected activity. Thus, he has failed to state a claim for retaliation under Title VII.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny NSU's request for a hearing, ECF No. 9, grant the Motion to Dismiss, ECF No. 4, and dismiss Plaintiff's Amended Complaint without prejudice.

An appropriate Order shall issue.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: March 17, 2023